**HOUGHTON MIFFLIN COMPANY and the State University of Iowa, Plaintiffs,**

**v.**

**NATIONAL COMPUTER SYSTEMS, INC., Defendant.**

**No. 73 Civ. 729.**

United States District Court,
S. D. New York,
Civil Division.
July 10, 1974.

Linden & Deutsch, New York City, for plaintiffs; by David Blasband, New York City, of counsel.

Squadron, Gartenberg, Ellenoff & Plesent, New York City, for defendant; by Howard M. Squadron, Neal M. Goldman, New York City, of counsel.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

Defendant National Computer Systems. Inc. moved on March 9, 1973 to dismiss this case for lack of in personam jurisdiction and improper venue, or in the

alternative, for an order under 28 U.S.C. § 1404(a) transferring the action to the District Court in Minnesota. The Court permitted plaintiffs to take discovery of the facts bearing on defendant's motion and assigned the case to a Magistrate for supervision of such discovery. Thereafter both sides submitted memoranda and defendant's motion was finally argued on May 31, 1974.

For the reasons that follow, the motion is denied.

The complaint alleges violations of the federal copyright laws. Venue for copyright actions is governed by 28 U.S.C. § 1400(a), which provides:

"Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights may be instituted in the district in which the defendant or his agent resides or may be found."

Venue would thus properly be laid in this district if defendant National Computer Systems or its agent "resides" or "may be found" here.

In personam jurisdiction over the defendant equally would exist should the defendant or its agent be "found" here, as that term has been interpreted to conform to due process requirements. Accordingly the question dispositive of both venue and jurisdiction is the same: whether the defendant or its agent is found here. Backer v. Gonder Ceramic Arts (S.D.N.Y.1950) 90 F.Supp. 737, Boltons Trading Corp. v. Killiam (S.D. N.Y.1970) 320 F.Supp. 1182.

From our reading of the cases, it appears that a corporation is considered to be "found" where the corporation has contacts sufficient—qualitatively or quantitatively—to render fair and reasonable the exercise of the district court's power over the corporation. Between the extremes of contacts so minimal that jurisdiction based upon them would offend traditional notions of fairness, [see e. g. Gauvreau v. Warner Bros. Pictures Inc. (S.D.N.Y.1958) 178 F.Supp. 510] and contacts so extensive that no reasonable mind could question its being found in the forum jurisdiction

[see e. g. Backer v. Gonder Ceramic Arts, *supra,* (S.D.N.Y.1950) 90 F.Supp. 737], lies a wide spectrum of corporate activity which must simply be weighed by the Court in an effort to determine in which direction the scales tip. That is the task at hand.

Defendant National Computer Systems is a Minnesota corporation and its principal place of business is in Minnesota. It is in the business of performing data processing for institutions, primarily educational. Such institutions mail their material to be processed to defendant's offices in Minnesota, the processing is then done wholly in Minnesota, and the results are mailed back to the customers. Additionally, the defendant produces and sells optical mark reading systems. These systems are produced in Minnesota.

It is apparently the plaintiffs' claim that the defendant makes use of plaintiff Houghton Mifflin's copyrighted materials in order to engage in its data processing.

We begin by emphasizing what contacts with this district are lacking. The defendant maintains no office in New York. It pays no taxes to New York. It is not licensed to do business in New York. It doesn't have—or at least never intended to have—a New York telephone listing.[1] It has no employees residing in this district. And it has no agent performing functions so essential to its doing of business in New York that were such functions not performed by an agent, they would be undertaken by the defendant itself. Cf. Gelfand v. Tanner Motor Tours, Ltd. (2d Cir. 1967) 385 F.2d 116.

The plaintiff contends that *Data Input, Inc.,* a corporation that maintained a New York office in 1972–73, is such an agent of the defendant. From the affidavit of that corporations' President, submitted by the defendant in lieu of answers to plaintiffs' interrogatories on

this issue, we cannot conclude that the services performed by *Data Input, Inc.* for the defendant "are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." *Gelfand, supra,* 385 F.2d at 121; see Blount v. Peerless Chemicals Inc. (2d Cir. 1963) 316 F.2d 695.

Furthermore, we have placed no weight on the company President's trip to New York for the purpose of meeting with counsel, nor on a trip made by one Joel Jennings to attend a function sponsored by the Advertising Distributors of New York. Finally, we have not focused on New York contacts which occurred prior to the first quarter of 1973—the period during which the complaint was filed.

Notwithstanding the absence of these contacts however, we believe those defendant does have sufficient to "find" it in this district.

Were mere solicitation of business in a district sufficient to "find" the solicitor there, the defendant would be "found" here by virtue of one Martin Ludwig's activities on its behalf.

According to the defendant's answer to plaintiffs' interrogatory No. 8, Mr. Ludwig resides in Wayne, New Jersey and maintains a place of business in Clifton, New Jersey. His position is that of Eastern Region Data Systems Manager for the defendant. In December 1972 and the first quarter of 1973, Mr. Ludwig called on 64 separate customers or potential customers in this district, on approximately 109 separate occasions (the greater number of occasions owing to the fact that he made repeated visits to certain customers).

These 109 calls are described as having been made for the purpose of business solicitation, customer service follow-up, initial presentation of the com-

---

1. The 1973 Manhattan Telephone Directory listed one *Data Input, Inc.* as a division of the defendant. We accept the defendant's

assertion that such characterization was unauthorized and mistaken.

pany's products and services, or preliminary introduction. In our view they constitute a significant and sustained effort on the defendant's part to derive business and benefit from this district, regardless of whether or not the calls have in fact ultimately produced any substantial business or benefit to the defendant. While it is the defendant's conclusion that they have not, we find that conclusion somewhat too modest. The defendant's sales of its products and services to New York customers in 1970 totalled $595,379.00; in 1971, $207,630.-00; in 1972, $309,180.00, and in the first quarter of 1973, $45,751.00. These figures represent approximately 5% of the defendant's total annual sales nationwide. Should the figure for the first quarter of 1973 prove to amount to 25% of the 1973 total, the total would approximate that of 1971. Such revenues in our view indicate that sustained and regular benefits have indeed been derived from this district by the defendant.

■ Notwithstanding the significance of Mr. Ludwig's activities, it is our understanding of the law that the solicitation of business in a district—by itself—is not sufficient to confer in personam jurisdiction over a defendant in that district. Scanapico v. Richmond, Fredericksburg & Potomac R. Co. (2d Cir. 1970) 439 F.2d 17, in banc, 439 F.2d 25; Blount v. Peerless Chemicals Inc., supra, (2d Cir. 1963) 316 F.2d 695; International Shoe Co. v. Washington (1945) 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. And we do not believe—with one exception—that the activities of Messrs. Grossman and Gray or of those other employees whose early 1973 activities are recounted in response to Interrogatory No. 8, add materially to the activities of Mr. Ludwig, for they appear to have been either isolated visits or visits made for the purpose of solicitation.

■ The exception noted refers to the activities of Dennis Gummow, a Minnesota resident and customer engineer. During the months of February,

March and April 1973, Mr. Gummow spent 29 days in this district installing and performing initial maintenance on an Optical Mark Reading System Model 70–10 leased from the defendant by Hunter College in March 1973 for a monthly rent of $1250.00. We view the leasing of this property to a New York customer as a substantial and fruitful contact with this district, and as one which, taken in combination with the defendant's solicitation of business, reasonably warrants that the defendant defend this lawsuit here.

Having concluded that in personam jurisdiction properly exists over the defendant, and, hence, that venue is properly laid here, it remains to be decided whether for the convenience of parties and witnesses, in the interest of justice, this action should be transferred to the United States District Court for the District of Minnesota, Fourth District, pursuant to 28 U.S.C. § 1404(a). We find that it should not.

The basis for defendant's request for transfer under § 1404(a) is that on the day the instant complaint was filed in this court, the defendant filed a complaint against the instant plaintiff Houghton Mifflin in the District Court in Minnesota, seeking basically a judgment declaring that it has not infringed Houghton Mifflin's copyrights. In light of the pendency of that lawsuit, defendant here contends that Minnesota is the more convenient forum.

Houghton Mifflin urged the same contention upon the District Court in Minnesota. We think Judge Larson, in rejecting it, aptly characterized the situation:

"Section 1404 allows transfer of venue for the convenience of parties and witnesses. Unless the balance of convenience is strongly in favor of defendant, the plaintiff's choice of forum must prevail. Owatonna Manufacturing Company v. Melroe Company, *supra*, [301 F.Supp. 1296] at 1307, and cases cited therein. While New York or even Massachusetts may be a

more convenient forum for the defendant, that convenience is offset by the fact that Minnesota is more convenient for the plaintiff. Consequently transfer of venue is denied.

There is no reason to delay this lawsuit while awaiting the outcome of the one in the Southern District of New York. Both were filed the same day. The defendant in each would like to see the other action proceed unhindered, basically for reasons of convenience. There being no procedural reason to transfer this action to the Southern District of New York for purposes of consolidation, there is no policy reason to prevent plaintiff from going forward with its action here."

 The one distinction between the situation presented to Judge Larson and that before me, is that unlike the plaintiff there who "resides" in Minnesota, the plaintiff here resides not in New York but in Massachusetts. That fact however should not be relevant for it is a plaintiff's *choice* of forum, however illogical, that is entitled to great deference. Accordingly we will uphold that choice.

The Court is convinced that the defendant's contacts with this district are sufficient to "find" it here. But in view of the fact that should such conviction be found erroneous on appeal, protracted, expensive and—in plaintiffs' opinion—landmark litigation will turn out to have been a nullity, we shall certify to the Court of Appeals pursuant to 28 U.S.C. § 1292(b) the question of whether the defendant is found here. There is no doubt but that the question is here controlling, nor that an immediate appeal will—should it result in reversal—materially advance the termination of the litigation.[2] We are further of the opinion that "there is substantial

ground for difference of opinion" as to the question certified.

For the foregoing reasons the defendant's motion is in all respects denied, and the question of whether the defendant is found here is certified to the Court of Appeals pursuant to 28 U.S.C. § 1292(b).

So ordered.

---

2. While we recognize that pragmatically the litigation could be terminated by an order granting the defendant's motion rather than denying it (which order would be appealable as of right), such an order would not reflect our considered judgment and thus could not be justified. For the same reason we feel bound to deny the defendant's request for a discretionary transfer to Minnesota even though such transfer would have the salutary effect of placing the litigation in a forum where jurisdiction would be indisputable.